# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division



ANGELA COOK, on behalf of her minor daughter, A.C.,

    Plaintiff,

v.    Case No.: 2:11-cv-362

CAROLYN W. COLVIN, Acting Commissioner, Social Security Administration,

    Defendant.

## REPORT AND RECOMMENDATION

This case presents a challenge to the final decision of the Defendant, the Commissioner of the Social Security Administration ("Commissioner"), who denied the Plaintiff's January 8, 2008, application for supplemental security income ("SSI") that was filed on behalf of her minor daughter, A.C., pursuant to Title XVI of the Social Security Act ("Act").

This case was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), Federal Rule of Civil Procedure 72(b), and Local Civil Rule 72. For the following reasons, the Court RECOMMENDS the Commissioner's Motion for Summary Judgment be GRANTED, the Plaintiff's Motion for Summary Judgment be DENIED, and the case be DISMISSED.

### I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On January 8, 2008, the Plaintiff applied for SSI on behalf of her minor daughter, A.C., who was five years old at the time, R.[1] 98-104, claiming as her severe impairments complex

---

[1] "R." refers to the certified administrative record that was filed under seal on December 7, 2011, pursuant to Local

partial seizures, secondary tonic-clonic seizures, attention deficit hyperactivity disorder ("ADHD"), mesial temporal sclerosis, and a hearing disability, R. 65. The Plaintiff's application was initially denied on March 20, 2008, R. 63, 65-69, and, again, after reconsideration on August 28, 2008, R. 64, 74-76. The Plaintiff, then, requested a hearing before an Administrative Law Judge ("ALJ") of the Social Security Administration ("SSA"), R. 82-84, which was held on September 22, 2009. R. 34-42. The Plaintiff testified and was represented by counsel at the hearing. *Id.* The ALJ denied the Plaintiff's application and issued an opinion to this effect on November 24, 2009. R. 17-29.

Specifically, the ALJ found A.C. was a minor and school-aged child by January 8, 2008, the application date, with an alleged disability onset date of May 27, 2003. R. 17, 20; 20 C.F.R. § 416.92a(g)(2). He further found she had not engaged in substantial gainful activity since the application date,[2] and that her learning and seizure disorders were severe impairments. R. 20. However, the ALJ concluded A.C. did not have an impairment or combination of impairments that met, medically equaled, or functionally equaled a listed impairment.[3] R. 20-21. Therefore, the ALJ found A.C. was not disabled as defined in the Act since the application date. R. 29.

The Plaintiff filed an appeal to the Appeals Council, R. 11, which was denied on April 29, 2011, R. 1-3. This action ensued and briefs were filed.

## II. STANDARD OF REVIEW

---

Civil Rules 5(B) and 7(C)(1). ECF No. 7.

[2] The Commissioner conducts a three-step sequential evaluation process to determine whether a minor is disabled. First, he determines whether the minor is engaging in substantial gainful activity, and, second, whether the minor suffers a medically determinable impairment that is "severe" or a combination of impairments that is "severe." After that, the ALJ determines whether the minor's impairment or combination of impairments meets, medically equals, or functionally equals a listed impairment. 20 C.F.R. § 416.924(a).

[3] In concluding A.C. did not have an impairment or combination of impairments that functionally equaled a listed impairment, the ALJ found A.C. experienced marked limitation in acquiring and using information, less than marked limitation in attending and completing tasks, interacting and relating with others, caring for herself, and health and no limitation in moving about and manipulating objects. R. 22-28; 20 C.F.R. § 416.926a(b)(1).

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs, and medical findings to determine the functional capacity of the claimant. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Shively v. Heckler*, 739 F.2d 987 (4th Cir. 1984). The regulations grant some latitude to the Commissioner in resolving conflicts or inconsistencies in the evidence, which the Court is to review for clear error or lack of substantial evidentiary support. *Craig v. Chater*, 76 F.3d 585, 589-90 (4th Cir. 1996). In all, if the Commissioner's resolution of the conflicts in the evidence is supported by substantial evidence, the Court is to affirm the Commissioner's final decision. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence is defined as evidence that "a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Id.*

### III. ASSIGNMENTS OF ERROR

*A. Issues Relating to A.C.'s IQ Score*

In a brief filed in support of her motion for summary judgment, the Plaintiff argues the ALJ erred by not finding A.C. was disabled in light of her IQ score of 67 and at least one other severe impairment and, more importantly, by not ordering new IQ testing since it had been over one year post diagnosis prior to age six. ECF No. 11 at 5. Specifically, the Plaintiff argues A.C. met the required level of severity under Listing 112.05(D) and 112.05(E)(2)[4] for mental retardation. Because these Listings require the claimant to demonstrate an IQ score between 60

---

[4] To meet the required level of severity for mental retardation under Listing 112.05, *inter alia*, the minor must, under subsection (D), demonstrate a valid verbal, performance or full scale IQ of 60 through 70 *and* a physical or other mental impairment imposing an additional and significant limitation of function, *i.e.*, a severe impairment, *or* the minor must, under subsection (E)(2), demonstrate a valid verbal, performance or full scale IQ of 60 through 70 *and* marked impairment in age-appropriate cognitive/communicative function *or* social functioning *or* personal functioning.

3

and 70, the parties focus their arguments on whether the ALJ erred by rejecting A.C.'s IQ score of 67.

On August 18, 2008, when A.C. was six years and two months old, licensed clinical psychologist Dr. Jeffrey Goodman ("Dr. Goodman"), on behalf of the Virginia Department of Rehabilitative Services, examined A.C. R. 274. The results of his findings and conclusions are contained in a psychology report he submitted on August 26, 2008. R. 274-81. After administering the Wechsler Intelligence Scale for Children – Fourth Edition, Dr. Goodman assigned A.C. a verbal comprehension score of 65 (first percentile), a perceptual reasoning composite score of 67 (first percentile), a working memory composite score of 56 (.2 percentile), a proceeding speed composite score of 106 (sixty-sixth percentile), and a full scale IQ score of 67 (first percentile). R. 278. He, however, discovered a statistically significant disparity between several of the composite scores, *id.*, and found the test profile to be quite unusual because all of the composite scores and the full scale IQ score fell in the mild range of mental retardation, whereas A.C.'s processing speech ability was clearly in the very average range of function, R. 279. Although he diagnosed A.C. with learning, cognitive, and mood disorders, *id.*, Dr. Goodman did not find it "necessarily appropriate" to diagnose her with mild mental retardation and, in fact, declined to do so. *Id.*, R. 280. Furthermore, he cautioned it was "quite possible" that A.C.'s test results underestimate "some better quality." R. 278.

In assessing whether A.C. demonstrated a limitation with acquiring and using information, which the ALJ found she did, the ALJ cited to Dr. Goodman's report and A.C.'s test results. R. 23. Rather, than accept without objection A.C.'s full scale IQ score, the ALJ, in particular, emphasized the ways in which Dr. Goodman questioned his own test results,

ultimately finding that A.C., despite exhibiting very significant learning disabilities, should not be diagnosed with mental retardation. *Id.* The Plaintiff does not refer to any other evidence in the record to support a diagnosis of mental retardation. In fact, not even Dr. Goodman's report nor the evaluations performed by other doctors support such a diagnosis.

For example, on January 17, 2008, attending physician Dr. Curtis Bryan ("Dr. Bryan") examined A.C, and the results of his findings and conclusions are contained in a psychiatric evaluation he submitted. R. 249-51. Dr. Bryan found A.C. had some difficulty with cognitive functions, R. 250, and diagnosed her with ADHD, R. 251, but at no point did he discuss, let alone diagnose, mental retardation. Similarly, neurologist Dr. Svinder Toor ("Dr. Toor") diagnosed A.C. with ADHD and a learning disability after examining her approximately five times over the course of 2008 and 2009. R. 283-84, 301-06, 308-09. Like Dr. Bryan, Dr. Toor never discussed or diagnosed her with mental retardation. Echoing these doctors are Drs. Linda Rodriguez ("Dr. Rodriguez") and Robert Gerstle ("Dr. Gerstle") with the state agency, who filed an evaluation of A.C. on January 8, 2008, after reviewing her medical records. R. 266-72. They concluded A.C. has ADHD, R. 270, and obvious, serious and very serious problems in acquiring and using information, R. 269. Drs. Rodriguez and Gerstle also addressed Dr. Goodman's test results, similarly concluding they were quite unusual and suggest a very significant learning disability problem but not necessarily a diagnosis of mild mental retardation. *Id.*

Furthermore, A.C.'s school records dated January 8, 2009, from her individualized education program show that although she exhibited cognitive and academic weaknesses and performed within the below average range, there was a statistically significant strength in her ability to match numbers in a row, she could identify the letters of the alphabet, and she appeared

to get along with her peers. R. 192. These findings, which are cited in the ALJ's decision, support the ALJ's conclusion that A.C. has a marked limitation in acquiring and using information. R. 23.

For these reasons, the ALJ did not err by finding A.C. was not disabled even in light of her IQ score of 67; a score Dr. Goodman, the psychologist who administered the IQ test, described as "quite unusual," "quite possibl[y]" an underestimate of "some better quality," and not necessarily supporting a diagnosis of mild mental retardation. R. 278, 279, 280. Nothing in the record contradicts these findings nor supports the Plaintiff's position. In fact, the opinions of Drs. Bryan, Toor, Rodriguez, and Gerstle and A.C.'s school records from her individualized education program support the ALJ's position that A.C. may have a marked limitation in acquiring and using information, but this fact does not necessarily equate to a diagnosis of mental retardation. To find otherwise would require ALJs to blindly accept test results, such as an IQ score, without questioning the validity of such results.

The second assignment of error the Plaintiff raises with respect to the ALJ's decision is his failure to order a post-hearing psychological CE, which would include a second IQ test, after finding A.C. did not meet the equivalency of the Listings based on the current record. ECF No. 11 at 6. The Plaintiff requested this in a September 9, 2009, pre-hearing memorandum. R. 97. Specifically, the Plaintiff argues that because A.C.'s full scale IQ score of 67 was assigned before she turned seven years old—she was six years and two months old at the time—the score is valid for only one year pursuant to 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(D)(10),[5] which states that IQ test results obtained before age seven are current for one year if at forty or

---

[5] The Plaintiff cites to the incorrect Listing (112.00(D)(1)) in her brief rather than the correct Listing (112.00(D)(10)). *See* ECF No. 11 at 6.

above. *Id.* The Commissioner does not respond to this argument in her brief, however. Notwithstanding, the argument fails.

In this case, the Plaintiff applied for SSI on January 8, 2008, on behalf of A.C., who was five years old at the time. R. 98-104. Approximately seven months later, on August 26, 2008, Dr. Goodman assigned A.C. a full scale IQ score of 67. R. 278. Between these dates, A.C. turned six years old, and she turned seven approximately four months before the administrative hearing. ECF No. 11 at 6. According to the Plaintiff, A.C.'s IQ test results ceased to become valid on August 26, 2009, one year from Dr. Goodman's testing, which was before the administrative hearing. *Id.*

The issue here is whether A.C. met the definition of disabled on January 8, 2008. Since Dr. Goodman's IQ testing was performed approximately seven months later, on August 26, 2008, it was performed within one year of the Plaintiff's application for SSI and met the criteria for Listing 112.05. If the Court were to order new IQ testing it would add nothing to the issue of what A.C.'s IQ was in 2008 and whether she met this criteria. *See Baldwin v. Astrue*, No. 11-cv-01553-WYD, 2012 WL 2190836, at *7 (D. Colo. June 14, 2012). There is simply nothing ambiguous about Listing 112.00(D)(10) to warrant a remand for the ALJ to order new IQ testing. Because less than one year elapsed between when the Plaintiff applied for SSI on behalf of A.C. and when Dr. Goodman tested A.C.'s IQ, Listing 112.00(D)(10) was complied with. Furthermore, to the extent the ALJ assessed the validity of A.C.'s full scale IQ score, which he has the discretion to do, he "is not required to accept it even if it is the only such result in the record." *Hancock v. Astrue*, 667 F.3d 470, 474 (4th Cir. 2012).

For these reasons, the Court finds the ALJ did not err in assessing the validity of A.C.'s

full scale IQ score and not ordering new IQ testing.

### A. Issues Relating to A.C.'s ADHD

The Plaintiff's second and final argument concerns whether the ALJ erred by finding A.C. has a learning and seizure disorder, which are severe impairments, without mentioning ADHD or analyzing and giving reasons for rejecting it as a severe impairment. R. 20, ECF No. 11 at 10.

As the second step of childhood disability cases, the ALJ is required to determine whether the child has an impairment or combination of impairments that is severe. 20 C.F.R. § 416.924(a), (c). Here, at Step 2 of the sequential evaluation, the ALJ found A.C.'s learning and seizure disorders to constitute severe impairments but did not separately analyze or find A.C.'s ADHD to be severe. The failure of an ALJ to find an impairment to be severe at Step 2, however, is harmless if the ALJ finds the claimant to suffer from another severe impairment, continues in the evaluation process, and considers the effects of the impairment at the other steps of the evaluation process. *Jackson* ex rel. *K.J. v. Astrue*, 734 F. Supp. 2d 1343, 1361 (N.D. Ga. 2010) (harmless error analysis at Step 2 of child's disability case). The ALJ did so here.

As noted above, despite not identifying ADHD to be a severe impairment, the ALJ found A.C. to suffer from two other severe impairments, that is, a learning and seizure disorder. The ALJ then continued in the evaluation process and considered all aspects of A.C.'s reported behavior when determining whether A.C.'s impairment or combination of impairments functionally equaled a listed impairment. *See, e.g.*, R. 21 ("[T]he undersigned has considered all of the relevant evidence in the case record.... [T]he undersigned has evaluated the 'whole child' in making findings regarding functional equivalence.... [T]he undersigned has also assessed the

interactive and cumulative effects of all of the claimant's medically determinable impairment(s), including any impairments that are not 'severe' in all of the affected domains.... [T]he undersigned has considered all symptoms."). Such analysis included the Plaintiff's report of A.C. twice failing kindergarten, being in learning disabled classes for most of her subjects, not being able to read, perform simple math, or identify all letters of the alphabet, difficulty with focusing, having social problems with her peers, and frequently having tantrums. R. 22. The ALJ also acknowledged educational reports that A.C. has a very serious problem in understanding and participating in class discussions, providing organized oral explanations and adequate descriptions, applying problem solving skills in class discussions, comprehending and following oral instructions, reading and/or comprehending written material, recalling and applying previously learned material, understanding school and content vocabulary, comprehending and doing math problems, expressing ideas in written form, and learning new material. R. 23. Finally, in concluding A.C. has less than a marked limitation in attending and completing tasks, the ALJ specifically discussed the teachers' and Dr. Goodman's reports, wherein it was revealed that A.C. has slight difficulties in her ability to focus long enough to finish an assigned activity or task and refocus to the task when necessary and has to be coaxed to continue or maintain her composure to complete tasks. R. 24. The ALJ also referenced A.C.'s diagnosis of ADHD and concluded "[t]he medical evidence supports" this. *Id.*

A review of the ALJ's decision *in toto* shows that, subsequent to his analysis at Step 2, he considered and evaluated all of A.C.'s behavioral issues in determining whether her impairment or combination of impairments functionally equaled a listed impairment. Given the ALJ's awareness that A.C. had been diagnosed with ADHD and his discussion of the evidence in the

record relating to her behavior in conjunction with her symptoms of ADHD, the failure to include ADHD as a severe impairment at Step 2 was harmless. *Jackson*, 734 F. Supp. 2d at 1362; *see also Murray v. Astrue*, No. 1:12cv08, 2012 WL 3730675, at *20 (N.D. W. Va. July 27, 2012) (noting, "importantly, according to the [Diagnostic and Statistical Manual of Mental Disorders], ADHD and [oppositional defiant disorder] share numerous traits," district court determined that failure of ALJ to find ODD as a severe impairment was harmless where ALJ found ADHD and Bipolar Disorder to be severe and continued in evaluation process); *see also Johnson v. Comm'r of Soc. Sec.*, No. 11-1268 (JRT/SER), 2012 WL 4328413, at *21 (D. Minn. July 11, 2012) ("[T]he failure to find additional impairments at Step Two does not constitute reversible error when an ALJ considers all of a claimant's impairments in the remaining steps of a disability determination.") (citing numerous cases), *report and recommendation adopted*, 2012 WL 4238389 (D. Minn. Sept. 20, 2012).

## IV. RECOMMENDATION

For these reasons, the Court RECOMMENDS the Commissioner's Motion for Summary Judgment be GRANTED, the Plaintiff's Motion for Summary Judgment be DENIED, and the case be DISMISSED.

## V. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the Plaintiff is notified that:

1. Any party may serve on the other party and file with the Clerk of the Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is mailed to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil

Procedure Rule 6(a) plus three days permitted by Federal Rule of Civil Procedure Rule 6(d). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is DIRECTED to forward a copy of this Report and Recommendation to all counsel of record.

/s/ Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
March 1, 2013

## CLERK'S MAILING CERTIFICATE

A copy of this Report and Recommendation was mailed on this date to the following:

Robert Wayne Gillikin, II
Rutter Mills LLP
160 West Brambleton Avenue
Norfolk, Virginia 23510
Counsel for the Plaintiff

Virginia Lynn Van Valkenburg
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Counsel for the Defendant

Fernando Galindo
Clerk of the Court

By: *[signature]*
Deputy Clerk
March /, 2013